Warburton v. Hoffman, No. 162532. Good morning, Your Honor. My name is Daniel Kaiser. I'm attorney representing the Plaintiff Appellant in this matter, Christopher Warburton. The issue before this court now is whether the pleadings were sufficiently pled to assert, to raise discrimination claim in the court below. Though otherwise, I would respectfully submit, Your Honor, that the the allegations that were made in this case more than adequately pled a claim for race discrimination, more than adequately satisfies Rule 8a's liberal pleading requirements for a race claim. Dr. Warburton was a professor, an African-American professor at John Jay College of Criminal Justice in the Economics Department. His allegations are that he was, for a period of time, harassed by the by the two individuals, the chairmen of the department who were who were who were the alleged discriminators here. His allegations are that when he came up for tenure, he was actually granted tenure by the principal committee that was responsible for Voted tenure. Voted tenure. Yes. I apologize, Your Honor. Thank you for that correction. He was not granted tenure. He was voted tenure. And then when it came, when that decision was reviewed by who he contends were the alleged discriminators here, that decision was reversed. That is what is alleged. But what claims of discrimination did he make against these two people? And what what instances of discrimination and with what particularity that would lead us, not the way it used to be, but the way after Iqbal and so on were required Well, first, Your Honor, there were internal race complaints he made, but that's not, I think what you're you're asking me is what in the complaint makes out for a race discrimination complaint. Well, the answer to that, Your Honor, is that what he alleges is that ultimately the scholarship and academic standards that he was held to on the reversal decision, because remember, as you rightly point out, he was voted for tenure by the committee. Does he say anything specific about that? Yes. Yes, Your Honor. He says that his the white professors who are his comparators, those his colleagues, his white colleagues were held to a different and less stringent standard for judging academic and scholarship potential for tenure than he was. That strikes me as a fairly conclusory allegation. Is there anything more specific in the complaint that you can point to to help the plaintiff satisfy his, albeit minimal requirement, but that we've said in Little John has to be provide plausible support for the requirements of McDonnell Douglas? Well, well, Your Honor, there, well, first, he says that he was held to a different standard, but what exactly? Well, I would I would say two things, Your Honor. One, at the pleading stage that that to say to set out to set forth in a pleading exactly what what standard was met or not satisfied rather than say, as many cases have said, that there are white comparators that were held to a different standard. And he clearly alleges that and puts them on notice that these were the academic standards that they were held to. And I was held to a different standard. You name a comparator? Well, we didn't name by. We didn't identify by a person by name, Your Honor. But there is nothing in the pleading requirements that required to say Professor, you know, John Smith was held to a different standard. Mr. Liz Taylor was held to a different standard. But you have to say something about the about the standard. That is, was it a matter of quantity of writing? Was it a matter of quality of writing? Of who was given, was made to look to these things? Was it a matter of teaching report? That is, there, I don't think you always have to name a specific comparator at this stage. I think that would be actually probably too much. But, but you do have to, today, not some time ago, but I think today you have to say something which, which focuses in, don't you? But here's the thing, Your Honor. He did meet those standards because the committee, the individuals with the most knowledge and the most intimate familiarity with his scholarship standards and his academic standards voted for tenure. This committee, this committee . . . No, that happens, look, that happens all the time. That an initial committee in the department votes for tenure and then at a different level where it's compared with other departments and other things, that doesn't, that doesn't, that fact doesn't say anything about race. Well, that fact, Your Honor, may not say that he wins a trial or that fact may not say that he wins a summary judgment decision, but we are now, the more we go back and forth on this, the more we are watering down what is supposed to be a liberal notice pleading requirement. And so to say that he was voted for tenure for the people that knew his standards most and then those individuals who identified as harassing him, those individuals who identified as the alleged discriminators, in the context of very good performance reviews where there were no issues at all, in the context of something mysteriously that he alleges disappearing from, from his personnel file, which he identifies as one of the principal documents that you would look to, to make a tenure decision with no plausible explanation provided by the discriminators or anyone else at, at, at, at, at John Jay College of Justice . . . There are stronger arguments in support of your position than the ones you were making. A number of your, a number of the allegations in the complaint are so conclusory that they, they simply don't, they, they simply are an assertion, but nothing backs them up. And, and if we just strike them and just, you, you are here now, you are trying to defend those concludes, those conclusory allegations, saying that, that where he says white teachers were held to a different standard, you don't say anything. You say he suffered harassment. There's no details, there's no description of any harassment. Nothing is stated that, that, that, that suggests that, that there in fact was harassment apart from his assertion that, that this conclusion. But notwithstanding Iqbal, McDonnell Douglas was pretty precise about what minimal things needed to be pleaded. And it wasn't talking about pleading, it was talking about satisfactory proof in the absence of an employer's statement of what was the reason. And McDonnell Douglas said, I'm sorry, going back to where I was, if, if, if, if certain facts would, would satisfy, would, would result in a verdict, in a judgment in plaintiff's favor in the absence of an employer's statement, it's surely sufficient to plead the facts that would result, that would support judgment in the absence of an employer's statement, which you always have, you always have that absence when you're pleading. McDonnell Douglas said that, that it is enough to show that you are in a protected class, you were qualified, and you didn't get what you, what you, what you wanted. It, it, it, it went on to say in McDonnell Douglas, you need to show that somebody who's not in that protected class got it. But that's simply, that has since been, been, been, been disregarded. And Burdine reemphasizes the minimal nature of what needs to be pleaded at this, at this initial stage. Of course, it all changes as the employer states a reason for the action. But I don't think that, you know, while Iqbal has required facts that give plausible to support to whatever needs to be pleaded, if all that needs to be pleaded is that you were qualified and you applied and you didn't get what you wanted, that is still satisfied. I think Littlejohn, I think our opinion in Littlejohn made it clear that this is still what, what stands. And Littlejohn, I mean, Iqbal applies, but it doesn't change what it is that you need to plead to satisfy the minimal standard. You don't need to, to have a convincing case of actual discrimination. You, this, this is an arbitrary thing. I, I must say, I think it was extraordinarily stupid of the Supreme Court to do that because they didn't need to do it. And it's caused complications in the federal court, endless, endless misunderstanding and complication, which are persisting today. But I think that McDonnell Douglas is still good law. And Iqbal needs that you need to plead facts that make plausible the things that you need to allege that McDonnell Douglas specified. And, and while I think a lot of your case is disregarded because it's conclusory and there's nothing to support it or substantiate it, the parts that remain are that he was a, that he was a professor, he wanted to be promoted, he applied, he was qualified. You show that he was qualified by adequately, by showing that he was voted tenure, uh, by the relevant committee. Um, and, um, and that does it as far as the pleading is concerned. In my view, I'd be interested to hear what your adversary has to say. But I, I don't think you can defend the parts of your complaint that are completely conclusory, but I don't think you need them under McDonnell Douglas. Perhaps on, um, you have two minutes on rebuttal. You could address the little John statement that you have at least pled minimal support for the proposition that the employer was motivated by discriminatory intent. Um, following up on what judge Laval has to say. Thank you. Thank you very much. Thank you. Uh, good morning. David Lawrence, the third assistant solicitor general appearing behalf of defendants. I believe, um, the district court correctly dismissed the second amendment complaint because it fails to elect sufficient facts to support a plausible claim of race discrimination concerning the denial of reappointment and tenure to the plaintiff plaintiff seeks to establish his claim by alleging that he was treated less favorably than his white peers. But he fails to plead any facts about the white professors. Isn't it enough? Isn't it enough that he is in a, uh, that he has pled plausibly that he is in a suspect classification in a classification that is forbidden and that he is qualified. That is, don't we in this particular area of McDonnell Douglas say that that is enough and explained it? The Supreme Court has said it, but explained it in Fisher v. Vassar by saying in our own bank by saying that we really want to get a very minimal prima facie case so that one can get the kind of discovery which often gives the added information that is being given here in a purely conclusory fashion that is not enough. Not at all, Your Honor. Under all of the pertinent authorities and all the authorities upon which the plaintiff relies, all the cases emphasize the need to plead facts which give rise to a plausible inference of discrimination. For instance, Judge LaValle was talking about Little John. Little John repeatedly talks about 793 F 311. You have to plead facts suggesting inference of discriminatory motivation. Yes, but, but, but McDonnell Douglas made very clear what those facts are that need to be plausibly supported. And, and Little John, we don't have the power in our circuit to reverse Supreme Court authority. Uh, Iqbal said what you need to plead, you need to show facts that make it, that, that, that plausibly support it. Now, what is it you need to plead in a, in a, in a discrimination case? You need to plead the facts that the Supreme Court said in, um, in McDonnell Douglas, uh, will be, will be sufficient. And, and of course, I mean, this is a, these discrimination cases are a completely unique category of law where what is called a prima facie case at the pleading stage and continuing throughout the stage until the employer comes forth and says, our reasons were this, um, that then ceases to be a prima facie case. As soon as the employer does that, then it becomes a pri, then prima facie becomes the same thing as it means in any other area of the law. Your honor, your honor, in Little John, the plaintiff pled that there was a particular comparator who had less experience and was therefore less qualified for the position that he was. In Smierowicz, upon which the plaintiff heavily relies, the same thing, the plaintiff pled that there was, that his comparator had substantially less experience and therefore is not qualified for the position that he was. No, but Smierowicz was a very odd situation because at that time, we, our court had a higher standard than any other circuit and so we dismissed that case by summary order. Supreme Court, before Iqbal and so on, took that case and reversed this and said you should behave like everybody else and allow a completely conclusory statement to be enough. It didn't go to what it was that should have been done. Supreme Court did that, peculiarly given that later they came back and changed their mind in Iqbal as to what was needed and went beyond what our, our statement is. So getting into that whole business is, I think, to the side. The real issue and the issue which I wish would be addressed is under Littlejohn, has there been a change in what was necessary somehow to plead under McDonnell Douglas? That is, in our circuit, for better or for worse, have we deviated from what it was that was minimally necessary McDonnell Douglas, as Judge LaValle has said, or does Littlejohn now say there has to be more? Well, Littlejohn specifically construed all of these cases, McDonnell Douglas and so on, and Littlejohn said you have to plead facts sufficient to establish a minimal inference of discrimination and that is not done here because there are no facts as to the comparators at all. And Littlejohn somehow said it is no longer the case under McDonnell Douglas that to plead, I am in Category A, which is a suspect category, a discriminated against category, and I am qualified, is enough of a fact to state, to meet that standard of discrimination. Yes, Your Honor, neither, none of the complaints at issue in any of the cases upon which the plaintiff relies, including Littlejohn, is as conclusionary as the plaintiff's here. No, but what Littlejohn said, and I was a member of the panel in Littlejohn and was very much involved in working with Judge Droney on the decision, Littlejohn did not purport in any way to derogate from or change what the Supreme Court had prescribed in McDonnell Douglas. Littlejohn, quite to the contrary, asserts that McDonnell Douglas is the law that governs what it is that needs to be pleaded. It's been characterized by the Supreme Court as something minimal, Burdine repeated minimal, but McDonnell Douglas tells what it is and Littlejohn was very much rooted in McDonnell Douglas. But the plaintiff here does not meet that minimal standard because he, his allegation that there are similarly situated white professors, it's conclusory, he plainly, he presumably had white professors. I agree with you, the part when he says that he was subjected to, to different standards than white professors, I agree that's a conclusory and I'm not taking that into account, but McDonnell Douglas doesn't require that you, that you get into that kind of detail. McDonnell Douglas is very clear what it is that's necessary and we've got that here, although we have a lot of garbage that we should properly disregard, we've also got this kernel, a very, very minimal kernel, but the Supreme Court said in all of its infinite wisdom that that's enough. McDonnell Douglas was a case that deals with the standard, it was not a pleading case. What the, the courts have since held, the Supreme Court and this court, is that in order to make a prima facie case under McDonnell Douglas, you have to plead facts leading to an inference of plausible, a plausible inference of discrimination, and here there are no such facts pled, there's nothing here. And that is fine, but does McDonnell Douglas say that a proper inference of discrimination for that first step is pled when a person pleads, I am in category X and I am qualified, and makes those two things plausibly, because if that's all that McDonnell Douglas requires for that inference, then I think we have it here, because plaintiff is clearly in category X, and as to qualification, which often is a problem in that, here the fact that the faculty committee voted him is certainly enough to get us by that. Now there's nothing else, there is nothing else. I, we all agree with you, but there's nothing else. The question is, is that enough under McDonnell Douglas? It is not, Your Honor, because he says that he is in category, he says that he is as qualified as persons who got tenure, but he does not plead. He doesn't have to say he's as qualified under, under McDonnell Douglas. I agree with you that that, that is, he doesn't say that persuasively, but he does say that he's black, and he does give minimal, adequate, plausible support for the proposition that he's qualified, and he didn't get the job. I, I don't believe he does plead plausibly that he is qualified where his complaint... Why doesn't, why doesn't the fact that the, that the, that the relevant faculty committee voted him tenure minimally support, or plausibly support, that he's qualified for, in addition to the fact that he's been doing it, he's been teaching for a long time, nobody's ever pointed out any problems with it, he's never had disciplinary problems, his, his, is, is nothing implausible about his being qualified for the position that he's held, and he wants to now hold permanently. As he alleges tenure was denied based on his scholarship, and he implicitly alleged, he implicitly incorporated it into his complaint, the president's letter that gave the reasons why he was denied tenure, namely problems of scholarship and of collegiality, so that letter has to be taken into account. So the fact that one committee out of many... He said that was the reason that he was told. And the letter... He's not saying it wasn't because of, because I'm black, but really it was because of my terrible scholarship. He's saying it was because I'm black, and they, and the reason that they gave was, oh, scholarship inadequate. Given the fact that, that the president gave facially non-discriminatory reasons for the plaintiff not receiving tenure, and given that the plaintiff pleads no allegations in his complaint as to his alleged comparators, and plainly he had comparators in mind, or he wouldn't have alleged that there were comparators, or he didn't have comparators in mind, he shouldn't be in court. In those circumstances, he does not... All those things, all those things will be highly relevant, and probably, unless the plaintiff comes up with a heck of a lot more, determinative at summary judgment. No one says this is going to go to a jury or something of that sort. The question is, what is enough under McDonnell-Douglas for 12b-6? And one understands why district judges might, busy as they are, want to get rid of these cases very early under 12b-6. On the other hand, if you have this rather peculiar statement, well, there might be a reason for it in the Supreme Court that that's all that's needed, then isn't that what we're bound to say is all that's needed? And the reason, you know, I was interested in the intermediate case, Livermore, is because that has some language which could be read to take away, although how it can take away from the Supreme Court, I don't know, because it can't. And we've had a good explanation that it doesn't. I've overstayed my time, but thank you. Thank you very much. Mr. Kaiser, you have several minutes for rebuttal. Just 15 seconds, Your Honor, to just address the motivation question you asked me about. I would just point to Your Honor's, who was far more eloquent and on point than I was during my argument, which is that motivation would not have to be alleged. I mean, he alleges he was discriminated against because he's black. I'm confused because Littlejohn says that absent direct evidence of discrimination, what must plausibly be supported by facts alleged in the complaint is that plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, we have all of that, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent. So would you point to, as Judge Calabresi has done, the preliminary recommendation that was then reversed for his appointment? Well, I mean, I first say that, as Your Honor pointed out, is that the inference, the motivation, that inference of racial motivation can be taken from a meeting satisfying the elements of a McDonnell-Douglas test. You don't do anything in addition, then, to the firm? Well, beyond, I think, that you could take the motivation from that test, I would argue, Your Honor, that, you know, ultimately, if he's approved after this lengthy career where there are no problems and no discipline and he's all well and good and everything is great, and then he's approved for tenure by this committee that looks at all of this stuff, and then ultimately is reversed on reasons that he claims, he contends, and alleges are false, if you proved that, if I took depositions of these people, if I clearly false explanations for things, all of that would support an inference of racial motivation under jurisprudence of differential treatment and all of that stuff. Would you say that absent the committee's reversal, the complaint would still be sufficient, or is the committee's reversal pivotal? Well, I think that him not getting a vote. The committee's vote and then the administration? Well, I think that the committee's vote, as this panel has pointed out, is evidence of his qualifications, so whether there would be sufficiently pled allegations that he was qualified for the position without the initial vote . . . Excuse me. I think we have to be willing for your client to win to say that motivation is sufficiently pleaded when there is no more than he is in Category X, he's black, and he's qualified. I think that we have to say that a minimal evidence of motivation supporting it is there when those two factors are there, because that's all there is here. Now, if that's what McDonnell Douglas says, then that's enough. If it doesn't say that, then clearly I don't think there's anything else here, but it's as simple as that. One of the things that is so frustrating about this area is that the categories that can be pleaded are absolutely infinite. I mean, you know, if you have a Russian grandmother, you're eligible to plead that I was discriminated against because I have a Russian grandmother. Another category is somebody who has a Russian grandmother and a Romanian grandfather. That's a different category, and under certain circumstances, I suppose that maybe the fact that you are somebody who had a Russian grandmother and a Romanian grandfather isn't enough to support even the minimal inference. I don't know. But this person, we're talking about somebody who's black, who himself is black. He's not one of the absolutely infinite numbers of categories that can qualify under McDonnell Douglas. A core classification. I don't know. We do not have the power to say that Little John or any other case has reversed McDonnell Douglas or purports to. Mr. Kaiser, do you have anything you'd like to say? That's all. Thank you, Your Honor. Thank you very much. Thank you both. We will reserve decision.